IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DORETTA GIANNETTI, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 8:22-cv-00506-PX |
| KULWINDER BATTH, *et al.*, | * | |
| Defendants. | * | |

\*\*\*

## MEMORANDUM OPINION

Pending before the Court are Defendants' motion to dismiss (ECF No. 5) and Plaintiffs' motion to remand this action to the Circuit Court for Prince George's County (ECF No. 13). The motions are fully briefed and no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the reasons that follow, the Court GRANTS Plaintiffs' motion, DENIES Defendants' motion as moot, and remands this case to the Circuit Court for Prince George's County for all further proceedings.

I.  **BACKGROUND**

Plaintiffs Doretta and Robert Giannetti are an elderly couple residing in Adelphi, Maryland. *See* ECF No. 1-2 ¶¶ 1-2, 7. For more than 60 years, the Giannettis have banked at the same location in Beltsville, Maryland, which is now owned and operated by Defendant Capital One, N.A. *Id.* ¶ 8. The Giannettis' banking practices remained essentially the same for six decades. The couple engaged in very basic, personal banking—they routinely deposited or withdrew small amounts, and almost always in person. *Id.* ¶¶ 9-10.

Kulwinder Batth was the bank manager at the Beltsville branch. ECF No. 1-2 ¶ 3. In that role, Batth interacted with the Giannettis in their weekly banking visits and reviewed their accounts in the normal course of her duties. *See id.* ¶ 91. Batth was also responsible for training and supervising bank employees. *Id.* ¶ 94. Such training included compliance with pertinent

Maryland law concerning predatory transactions involving the elderly. *Id.* In particular, Maryland Financial Institutions Article § 1-306 requires a financial institution, including its officers and agents, to

> make an abuse report as provided in this subsection if an employee of the fiduciary institution, while acting within the scope of the employee's employment:
>
> > (i) Has direct contact with an elder adult or reviews or approves an elder adult's financial documents, records, or transactions in connection with financial services provided by the fiduciary institution to or for the elder adult; and
> > (ii) Observes or obtains knowledge of behavior or unusual circumstances or transactions that leads the employee to know or have reasonable cause to suspect that the elder adult is the victim of financial abuse.

Md. Code Ann., Fin. Inst. § 1-306(d); *see also* ECF No. 1-2 ¶ 96. The statute also makes plain that any "officer, employee, agent, or director" maintains an individual "duty to make a disclosure to an adult protective services program or file a report of financial exploitation under this section." *See* Md. Code Ann., Fin. Inst. § 1-306(g).

Batth was also familiar with Project SAFE (Stop Adult Financial Exploitation), a public-private partnership in Maryland to protect the elderly from financial exploitation. ECF No. 1-2 ¶¶ 17, 93-95. Consistent with Section 1-306(g), the Project SAFE model reference manual emphasizes that "employees of financial institutions[] are required to play a pivotal role in the process of detecting and reporting possible financial exploitation of elder adults." *Maryland's Project SAFE, Model Reference Manual for Financial Institution Employees* (2d ed. 2012), at iii (letter from Office of the Attorney General).

Beginning in August 2020, an unnamed individual holding himself out as a Capital One employee persuaded Mrs. Giannetti to use her bank account to "funnel money, through wire transactions, to a variety of banking institutions throughout the country." ECF No. 1-2 ¶¶ 20, 24. The Giannettis did not have any relationship with any of the transferee banks. *Id.* ¶ 29, 34, 41.

2

Nevertheless, Mrs. Giannetti effectuated a series of wire transfers in person at the Beltsville branch and with help from bank employees for several months. *Id.* ¶¶ 25-54. The transfers authorized large sums to be deposited with financial institutions that specialized in cryptocurrency. *See id.* ¶¶ 29-32, 35-36.

The first attempted wire transfer—reflected as a "wire transfer deposit BLOCKCHAIN ACCESS UK LTD 081920"—bounced back. ECF No. 1-2 ¶¶ 29-31. Despite this clear red flag that Mrs. Giannetti had engaged in a highly suspicious transaction, neither Batth nor any other bank employee took any action in advance of Mrs. Giannetti executing several more similarly strange wire transfers. *Id.* ¶¶ 32, 120. Altogether, the Giannettis wired nearly $1.5 million to various cryptocurrency institutions. *Id.* ¶ 55. In the 62 years prior, never had the couple authorized a wire transfer at all, let alone to speculate in cryptocurrency. *Id.* ¶¶ 11, 29.

On December 27, 2021, the Giannettis sued Capital One and Batth in the Prince George's County Circuit Court for negligence stemming from Defendants' failure to take any steps to prevent any of the $1.5 million transactions. *See* ECF No. 1-3. Defendants thereafter removed the action to this Court, alleging diversity jurisdiction under 28 U.S.C. § 1332(a). ECF No. 1 at 1. The Giannettis, in turn, moved to remand the action, suggesting that this Court lacks jurisdiction because both the Giannettis and Batth are Maryland citizens, thus defeating complete diversity. *See* ECF No. 13 ¶¶ 10-12. In response, Defendants argue solely that the Giannettis fraudulently joined Batth, and so "Batth's citizenship should be ignored when determining diversity of citizenship[.]" ECF No. 1 at 3; *see also* ECF No. 16 at 18. Because the Complaint avers a plausible claim against Batth, the Court concludes she was not fraudulently joined, and so, remand is proper.

## II.  ANALYSIS

This Court is one of limited jurisdiction, authorized to hear civil cases giving rise to a federal question or brought pursuant to the Court's diversity jurisdiction.  *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).  Diversity jurisdiction is proper where the amount in controversy exceeds $75,000 and complete diversity exists such that no plaintiff is a citizen of the same state as any defendant.  28 U.S.C. § 1332(a); *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015).  A defendant may remove a state court action on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1441.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).

The Court must construe the basis for federal jurisdiction narrowly, resolving any doubts in favor of remand.  *Mulcahey*, 29 F.3d at 151; *see also Cohn v. Charles*, 857 F. Supp. 2d 544, 547 (D. Md. 2012) ("Doubts about the propriety of removal are to be resolved in favor of remanding the case to state court.").  The defendant as the removing party bears the burden of "demonstrating the court's jurisdiction over the matter."  *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008); *see also Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005).

Where defendants are joined fraudulently, district courts "can disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants."  *Weidman v. Exxon Mobile Corp.*, 776 F.3d 214, 218 (4th Cir. 2015) (internal quotation marks omitted) (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)).  The party seeking to establish fraudulent joinder must demonstrate "either that the plaintiff committed outright fraud in pleading jurisdictional facts, or that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court."  *Weidman*, 776 F.3d at 218 (internal quotation

marks omitted) (quoting *Mayes*, 198 F.3d at 464).

Importantly, the lens through which the Court considers the question of fraudulent joinder "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6)." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999). The plaintiff "must show only a 'glimmer of hope'" that the claims against the non-diverse defendant will succeed. *Johnson*, 781 F.3d at 704 (quoting *Mayes*, 198 F.3d at 466). In evaluating whether plaintiffs have satisfied the "glimmer of hope" standard, courts "resolve all legal and factual issues in their favor." *Id.*; *see also Hartley*, 187 F.3d at 424 ("The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor.").

Defendants assert, as they must, that the Giannettis could never establish a negligence claim against Batth directly. ECF No. 16 at 13-18. Defendants more particularly argue that because the Giannettis' losses are purely economic, a negligence claim against Batth is barred unless the Complaint plausibly avers that Batth owed them an independent duty of care. *Id.* at 13-14. *See Jacques v. First Nat'l Bank*, 307 Md. 527, 534-35 (1986); *Pasternak & Fidis, P.C. v. Recall Total Information Management, Inc.*, 95 F. Supp. 3d 886, 900 (D. Md. 2015). A duty of care in this context arises where an "intimate nexus" exists between the parties, *Jacques*, 307 Md. at 534, or where courts find "the relationship between the parties to be sufficiently close—or intimate—to support finding a tort duty." *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 615 (2017) (citing *Jacques*, 307 Md. at 535)).

Although admittedly the Giannettis advance a novel liability theory as to Batth, the Court cannot conclude that success on the claim is without all hope at this early stage. At a minimum,

Financial Institutions Article § 1-306 imposes a duty of care that Batth plausibly violated. ECF No. 1-2 ¶¶ 86-105.[1] Under this statute, Batth as bank manager was obligated to take certain steps to reduce the risk that the Giannettis became the victims of fraud. *Id.* ¶¶ 17, 18. Even though the statute itself may not give rise to a private cause of action, that is not the Plaintiffs' theory of liability. Rather, the Plaintiffs correctly maintain that a violation of statutory obligations can provide relevant evidence supporting Batth's breach of her duty of care to the Giannettis. *See In re Marriott International, Inc., Customer Data Security Breach Litigation*, MDL No. 19-md-2879, 2020 WL 6290670, at *9 (D. Md. Oct. 27, 2020) (*citing Kiriakos v. Phillips*, 448 Md. 440, 458 (2016)). *Compare Ginder v. Bank of America Corp.*, No. 6:14-cv-1271-Orl-40DAB, 2015 WL 898595, at *2-3 (M.D. Fla. Mar. 3, 2015) (determining that Florida's Adult Protective Services Act conferred a duty on Bank of America under a theory of common law negligence), *with Abhyankar by Behrstock v. JPMorgan Chase*, N.A., No. 18-cv-9411 (PKC), 2020 WL 4001661, at *6 (S.D.N.Y. July 15, 2020) (finding no duty of care where Plaintiffs did "not point to an analogous New York statute.").

Moreover, the Complaint makes plausible that the parties maintained an "intimate nexus" sufficient to trigger tort liability as to Batth. Batth had personal contact with the Giannettis—extraordinary customers who set themselves apart through their habitual rudimentary banking practices for six decades at the Beltsville branch. ECF No. 1-2 ¶¶ 8, 13. Thus, it is at least plausible that their sudden and repeated cryptocurrency transactions, which are notoriously

---

[1] The Giannettis have also alleged that Batth had a duty to train bank employees concerning their obligations under Section 1-306. ECF No. 1-2 ¶ 94. Other jurisdictions have concluded that a manager's duty to train may form the basis of a negligence claim, at least enough to survive the fraudulent joinder standard. *Cf. Serna v. Family Dollar Stores of New Mexico, Inc.*, No. 2:20-cv-00090-KRS-GBW, 2020 WL 2840320, at *1 n.1 (D.N.M. June 1, 2020) (remanding case for lack of diversity in a slip-and-fall negligence case where plaintiff averred that the store manager defendant "had a duty to train subordinate employees"); *Chandler v. Kohl's Department Stores, Inc.*, No. 1:20CV85, 2020 WL 2190638, at *6 (N.D. Ind. May 6, 2020) (same).

involved in fraud schemes, would have raised red flags for Batth consistent with her reporting obligations under Maryland Financial Institutions Article § 1-306 and Project SAFE. *Cf. Day v. United Bank*, No. PX-16-975, 2018 WL 3707833, at *7 (D. Md. Aug. 3, 2018) ("[T]he Bank has no customer relationship or any other contract-like relationship with Hudson or Day."); *Wash. Cty. Board of Educ. v. Mallinckrodt Ard, Inc.*, 431 F. Supp. 3d. 698, 709 (D. Md. 2020) (corporate defendant did not begin allegedly tortious conduct until five years after individual defendant left company). Batth's inaction in the face of her statutory obligations, and her sufficiently intimate relationship with the Giannettis as longtime personal banking customers, provides the "glimmer of hope" necessary to survive Defendants' accusations of fraudulent joinder. *Johnson*, 781 F.3d at 704 (quoting *Mayes*, 198 F.3d at 466). Thus, because the Court concludes that Plaintiffs have not sued Batth to defeat this Court's jurisdiction, the case must be remanded.

### III.     CONCLUSION

For the foregoing reasons, the motion to remand is granted. A separate Order follows.


September 28, 2022                                           /s/
Date                                                         Paula Xinis
                                                             United States District Judge